466 P.2d 392

Mae SMITH, Petitioner,

v.

The INDUSTRIAL COMMISSION of Arizona, Respondent,

Safeway Stores, Incorporated, Respondent Employer,

The Travelers Insurance Company, Respondent Carrier.

No. I CA–IC 293.

Court of Appeals of Arizona,
Division 1,
Department A.

March 16, 1970.

Morgan & Jerome, by Donald J. Morgan, Phoenix, for petitioner.

Donald L. Cross, Chief Counsel, Phoenix, for respondent Industrial Commission of Arizona.

Kramer, Roche, Burch, Streich & Cracchiolo, by Robert L. Milam, Phoenix, for respondent Employer and respondent Carrier.

STEVENS, Judge.

The petitioner was an employee of the Safeway Stores and, in the course and scope of her employment, she injured her left heel. Sometime later, and well within the year following the industrially related accident, she filed her claim with The Industrial Commission. Shortly thereafter and on 13 October 1967, the Commission addressed a communication to The Travelers Insurance Company. This communication was entitled "Notice of Injury and Acceptance of Liability." It set forth the date and place of the injury as well as the name of the petitioner. There is an affidavit in the file that a copy thereof was sent to the petitioner at her post office box address. She later testified that the copy was received by her.

The file reflects a document entitled "Record of Commission's Action" which is dated 7 November 1967. This bears the signature of two of The Industrial Commissioners. It recites the petitioner's wage. It directs the respondent carrier to provide accident benefits and to pay compensation at a stated dollar rate per day "until further order by this Commission." This was an award. In Russell v. Industrial Commission of Arizona, 104

Ariz. 548, 456 P.2d 918 (1969), the Supreme Court discussed an earlier decision relating to the meaning of the term "award" as that term is used in the Workmen's Compensation Law. The Supreme Court then stated: "* * * [w]e noted that 'award' applied to any finding or decision of the Commission of the amount of compensation or benefit due an injured employee." 104 Ariz. at 552, 456 P.2d at 922. In Talley v. Industrial Commission of Arizona, 105 Ariz. 162, 461 P.2d 83 (1969), the Supreme Court again discussed the question of what constitutes an award. The Court stated, "[b]y construction, A.R.S. § 23–951, subsec. A has been applied to intermediate awards, orders and findings so that if a rehearing is not requested and a timely review sought in the courts, the award, order or finding is forever conclusive * * *." 105 Ariz. at 162, 461 P.2d at 87. The 7 November document did not contain a 20-day clause. There is an affidavit in the file that a copy was sent to the petitioner at her post office box and she later testified that she received the copy.

The petitioner's physician referred her to an orthopedic specialist. It was discovered that she had spurring on both heels and the specialist recommended that the spurs be removed by surgical procedures. This recommendation was made subject to the approval of the petitioner and her attending physician. Without a formal hearing, The Industrial Commission entered a further "Record of Commission's Action" bearing date of 24 April 1968 and this was signed by two of The Industrial Commissioners. Again her wages were recited. This action provided for "temporary total (compensation) from: September 23, 1967 through October 15, 1967 23 days/$9.26 equals $212.98." The file does not indicate that the 24 April action was sent to the petitioner. Under date of 25 April we find a "Findings and Award for Temporary Disability" which is in conformity with the action taken on 24 April. Finding No. 8 is as follows:

"That this Commission assumes no liability for any preexisting condition of the feet—that the benefits hereunder are payable for a temporary aggravation only."

The award portion of this document provides for "accident benefits, through March 18, 1968" and for "the sum of $212.98." The 25 April 1968 document contains a 20-day clause and bears the names of two of The Industrial Commissioners affixed by rubber stamps. There is an affidavit that this award was mailed to the petitioner at the same post office box address. The petitioner testified that she did not receive this document. The affidavit of service further recites that the award was mailed to the employer and to the carrier.

Under date of 8 May 1968, the employer wrote to the petitioner stating in part:

"The Industrial Commission has ruled that they will not pay workmen's compensation on your claim after 10–15–67, and that medical benefits payable under industrial will be paid through March 18, 1968 only."

The above quoted communication corresponds with the data set forth on the 25 April 1968 award. The petitioner acknowledged that she received this communication from her employer. This fact is recited, not for the purpose of establishing notice to the petitioner as to the action of the Commission, but in corroboration of the affidavit of mailing.

Later the petitioner further consulted her attending physician with reference to the possibility of orthopedic surgery. She testified that at that time she first became fully aware that her compensation benefits had been terminated. She promptly filed a "Petition for Rehearing or Reopening." Therein she recited, in part, "award not served on applicant." The last mentioned petition did not attack the lack of the actual signing of the 25 April award. The hearing was held which was limited to the jurisdictional question concerning the timeliness of the petition for the hearing. The petitioner testified that she and two other members of her household had access to the

post office box and removed mail from the box. She testified that she did not receive the 25 April 1968 award, that she was not alerted to the problem by the 8 May 1968 communication from her employer and that she only became aware of the problem when talking to her attending physician. Prior to the time of his conversation with the petitioner, the attending physician had written the Commission requesting authorization for the orthopedic surgery. In response to that request the attending physician was advised by the Commission that the claim had been closed. The other members of her family were not called as witnesses. At the hearing it was brought out that the Commission employee who had executed the 3 affidavits of service by mail was "right next door" to the room in which the hearing was being conducted. The employee who executed the affidavit of mailing was not called as a witness.

The referee rendered his report and the petitioner filed her objections thereto. In the objections, the matter of proof of service was again attacked. The objections further stated:

"There was no showing of any kind that the Commission had at any time, voted on, approved, or signed the award attempting to deny the claim.

"It has been previously pointed out that, regardless of what the 'checkers' may have said, there was no controversion of the fact that many days after they claim to have sent out an unsigned award, it still has not been certified nor signed; therefore, the time never could have started to run against the applicant."

On 11 April 1969 the Commission entered the award which is now before us. It held that the petition, pursuant to which the hearing was held, be denied and that the 25 April 1968 award was *res judicata*.

## SERVICE OF THE AWARD

■ Industrial Commission Rule 43 specifies the manner of service. The Rule states in part "the service shall be deemed complete when the paper to be served is so deposited," in the United States mail. This Rule was discussed by us in Mueller v. Industrial Commission of Arizona, 9 Ariz. App. 147, 450 P.2d 113 (1969). Service is accomplished by mailing to the proper address. The petitioner verified the continuation of the use of the post office box to which all of the mailings were addressed. The petitioner received the fruits of the first two mailings. The respondent employer received a copy of the 25 April 1968 award. The person to whom the mailing is addressed need not receive the communication as a condition precedent to proper service. Goodman v. Jones, 102 Ariz. 532, 433 P.2d 980 (1967) and Phoenix Metals Corp. v. Roth, 79 Ariz. 106, 284 P. 2d 645 (1955).

## THE UNSIGNED AWARD

■ It is urged that the unsigned award of 25 April 1968 is void. Reliance is placed upon our decision in the case of Benites v. Industrial Commission of Arizona, 10 Ariz.App. 459, 459 P.2d 738 (1969). The Arizona Supreme Court granted review in Benites on 6 January 1970. We hold to the view that Benites is a correct statement of the law. Even so, there is a distinguishing feature between Benites and the case now before us. In Benites we were unable to find any evidence of the fact of a Commission decision. In the case now before us, we have the action of the Commission taken on 24 April 1968 signed by two of The Industrial Commissioners. The file reflects the official act of The Industrial Commission through its Commissioners. It is our opinion that the absence of their signatures on the 25 April 1968 award is not jurisdictional and is a matter which should have been timely brought to their attention other than by an exception to the report of the referee.

Under the circumstances presented to us, we hold that the award of 25 April 1968 was a valid award, that it was served in the manner prescribed for the service of an

award and that it became *res judicata*. The award of 11 April 1969, which is the basis of the proceedings now before us, is affirmed.

DONOFRIO, P. J., and CAMERON, J., concur.